In re Leon KAPPLER, Joel M. Lytle and Barbara J. Lytle, Mark Virgil Coultes and Anida Lee Coultes, Bradley Joseph Copeland, a/k/a Bradley J. Copeland, a/k/a Brad Copeland, Debtors.

GENERAL MOTORS ACCEPTANCE CORPORATION, a New York Corporation, Plaintiff,

v.

Winn HEDGLIN, Trustee, Defendant.

Bankruptcy Nos. 80–00064, 81–00047, 81–00126 and 81–00191.
Adv. No. 80–0112.

United States Bankruptcy Court, E. D. Michigan, N. D.

Oct. 13, 1981.

Ralph Selby, Bay City, Mich., for trustee.

Douglas Philpott, Flint, Mich., for creditor.

## MEMORANDUM OPINION AND ORDER

HARVEY D. WALKER, Bankruptcy Judge.

The above referenced cases have been consolidated for the purpose of deciding a common question of law. The facts in each of them are not disputed. The parties have stipulated that the proceeds from the life insurance premiums which are at issue shall be preserved for the prevailing party pending the outcome of the case.

The Plaintiff, General Motors Acceptance Corporation, (hereinafter "GMAC") filed a Complaint seeking to have the Defendant (hereinafter "Trustee") abandon claims to an automobile and insurance rebates.

A hearing was held on March, 1981, at which time the Court reserved decision on the matter and requested that both counsel file briefs with the Court. As of September 3, 1981, both briefs have been filed and the Court will proceed to render its opinion herewith.

The issue presented is whether GMAC or the Trustee are entitled to the returned or unearned life insurance premiums provided for under a retail installment sales contract for an automobile.

GMAC contends that pursuant to its security agreement entered into with the Debtor, not only does it have a duly perfected security interest in the automobile, but in addition, that it has a secured interest in and to rebated or unearned life insurance premiums provided for under the sales agreement. In support of its contention, GMAC relies on paragraph 12 of the Security Agreement which provides the following:

"DESCRIPTION OF SECURITY INTEREST. Seller retains a security interest UNDER THE UNIFORM COMMERCIAL CODE IN PROPERTY DESCRIBED ABOVE AND ANY PROCEEDS TO SECURE PAYMENT and performance of buyers obligation hereunder including any additional indebtedness incurred as provided herein, and under any extensions or renewals hereof."

It is clear that the group credit life insurance policy purchased by the Debtor provides to GMAC, the beneficiary, a security for the pay-off of the Debtor's obligation in the event of his death. GMAC argues that, "as such, it is identified as a security interest under Paragraph 12...".

It is the Trustee's contention that the returned or unearned life insurance premiums do not constitute collateral security under the sales agreement.

There is no authority which directly addresses the issue presented. However, there are several decisions which are of some benefit in arriving at a conclusion.

GMAC cites Opinion No. 4572 of the Attorney General dated February 3, 1967. It is recognized therein that "credit life insurance would come within the category of 'insurance as security for or by reason of the obligation of the buyer.'" The Court would agree with GMAC's claim that "... the legislature and the Attorney General recognized that credit life insurance would in fact be a security to satisfy the obligation of the buyer *in the event the buyer lost his life*" (emphasis added). However, the fact that credit life insurance would be a security to satisfy the obligation in the event of the purchaser's death does not necessarily establish a security interest in the premiums in the situation presented at bar.

In these cases, the creditor has petitioned the Court for an abandonment by the Trustee of the vehicle purchased by the Debtor in each instance. Upon the Trustee's abandonment of such vehicle and GMAC's repossession of it, the need for protection in case of the buyer's death is eliminated, since the collateral is then under the control of the creditor. Furthermore, the condition which would establish the creditor's entitlement to such insurance proceeds has not occurred namely, the event of the buyer's death.

Turning to the Motor Vehicle Sales Finance Act, as amended, M.C.L.A. § 492.101 et seq., the Court notes that Section 13 sets forth in detail the permissible contents of

an installment sale contract along with the order in which the various items must appear. Section 13(b) requires that every contract include cash price, down payment, unpaid cash price balance, insurance premiums, other costs, principal amount financed, finance charge, time balance, and payment schedule. The Trustee has emphasized that Section 13(c) provides for collateral security as a separate item aside from insurance premiums. The legislature has apparently distinguished between collateral security and insurance premiums.

The Trustee has also cited Opinion No. 5869 of the Attorney General, dated March 31, 1981. The Attorney General has decided that the costs of an indemnity bond to secure the lender in the event of the buyer's default under the Motor Vehicle Sales Finance Act is, in essence, the purchase of collateral security which is not includable in the installment sale contract.

Finally, the Court is impressed with the recent decision by the United States Supreme Court in *Anderson Brothers Ford and Ford Motor Credit Company v. Olga Valencia and Miguel Gonzales,* —— U.S. ——, 101 S.Ct. 2267, 68 L.Ed.2d 783 (1981). The Court held that provisions of retail installment contracts, assigning proceeds of returned or unearned insurance premiums to creditors, did not constitute a "security interest" under the Federal Truth in Lending Act. Apparently, at least for purposes of the Federal Truth in Lending Act, there is no requirement that insurance premiums be described in the contract as it is not a security interest.

A consideration of the issue presented leads the Court to conclude that the Trustee is entitled to the proceeds from related or unearned insurance premiums. Had GMAC wished to perfect its interest in such proceeds, it could have included language in the contract which would provide that such premiums were to be property of the creditor upon default of the buyer.

The Court finds, therefore, that the proceeds from returned or unearned life insurance premiums should properly go to the Trustee for the benefit of the estate.

IT IS SO ORDERED.